# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CHARLES SCHUMACHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-4130-HLT-KGG |
| | ) | |
| HARDWOODS SPECIALTY PRODUCTS, US, LP; *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) ) | |

## MEMORANDUM & ORDER GRANTING
## MOTIONS TO QUASH SUBPOENAS DUCES TECUM

Before the Court are Defendants' Motion to Quash Plaintiff's Subpoena to T-Mobile (Doc. 68 ) and Defendants' Motion to Quash Plaintiff's Subpoenas to Liberty Hardwoods, Inc., US Foods, and Foundation Recovery Systems (Doc. 70). After review of the parties' motions, the Court **GRANTS** Defendants' Motions to Quash (Docs. 68, 70).

### BACKGROUND

The present lawsuit results from a motor vehicle accident between Plaintiff and the individual Defendant that occurred on October 26, 2016. (Doc. 28, at 4.) Plaintiff alleges that the individual Defendant was acting as an agent/employee of the corporate Defendants at the time of the accident. (*Id*.) Plaintiff contends that

1

he "sustained extensive and severe personal injuries, resulting in multiple surgeries, multiple procedures, and multiple hospitalizations and other damages" as a result of the accident. (*Id*., at 6.)

In his Amended Complaint, Plaintiff alleges that on October 26, 2016, at approximately 6:30 a.m., he was driving northbound on Highway K-177 towards Manhattan, Kansas, in an area without artificial lighting. (Doc. 28, at 4.) Plaintiff continues that Defendant Higgs, while acting as an employee/agent of Defendant Hardwood Specialty Products, and/or Defendant Paxton Hardwoods, LLC, "was operating a tractor-trailer rig that was at least 63 feet in total length and was heading northbound on highway K-177 well in front of the Plaintiff." (*Id*.) Plaintiff alleges that the trailer being pulled by Defendant Higgs was covered with a very dark black tarp and Defendant Higgs "was operating the … tractor-trailer without the required operable lamps and … without wearing his corrective lenses as required." (*Id*., at 5.) Plaintiff alleges that Defendant Higgs

> was proceeding northbound on highway K-177 in Riley County, Kansas, he pulled the tractor-trailer unit onto a paved area between the north and south bound lanes of the highway with the vehicle partially into the southbound lanes; Defendant Troy Higgs then began to negligently back the entire tractor-trailer rig across the northbound lanes of highway K-177 in an apparent attempt to back the tractor-trailer into Acorn Lane.
> … In the process of negligently backing this tractor-trailer rig across highway K-177, Defendant Troy Higgs completely blocked both lanes of northbound traffic for highway K-177 with the trailer, which was

> covered with a black tarp and which did not have the
> required operating lighting.

(*Id*.) Plaintiff contends that he "did not have sufficient time, distance, or opportunity to avoid the Defendant's tractor-trailer as it blocked both lanes of northbound traffic, and the front of Plaintiff's vehicle crashed into the rear driver's side of the defendant's tractor and the front left side of the defendant's trailer," resulting in several personal injuries to Plaintiff.[1] (*Id*., at 5-6.)

Currently pending before the Court is the Motion to Quash Subpoena to T-Mobile filed by Defendants. (Doc. 68.) The subpoena duces tecum instructs nonparty T-Mobile to produce cell phone records for Defendant Higgs, including calls received, calls made, length of calls, text messages received, text messages sent, data sent, data received, and data usage from October 25 – 27, 2016.[2] (*Id*., at 2.) In an effort to resolve this matter, counsel for Defendants sent Plaintiff's counsel an email, which proposed a narrower scope for the subpoenaed records with a time frame of 4:30 a.m. to 7:30 a.m. on October 26, 2016, the date of the occurrence. (*Id*., at 2, 8.) Plaintiff would not agree to this compromise.

---

[1] Certain substantive aspects of Plaintiff's allegations are denied by Defendants. It is not necessary, however, for the Court to address these factual disputes in the context of the present motion.
[2] Plaintiff does not contest Defendant Higgs' standing to challenge the T-Mobile subpoena. (Doc. 79, at 3.)

3

Also pending is Defendants' Motion to Quash Plaintiff's Subpoena to Liberty Hardwoods, Inc., US Foods, and Foundation Recovery Systems.[3] (Doc. 70.) These subpoenas instruct the nonparties to produce employment records for Defendant Higgs, including his complete employment file, all documents related to his employment, documents relating to pre-employment investigations, and documents relating to his termination. (*Id.*, at 2.)

## **ANALYSIS**

### I. **Legal Standard.**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.

---

[3] Plaintiff does not raise the issue of standing in opposition to Defendants' motion to quash these subpoenas.

4

Fed.R.Civ.P. 45 governs subpoenas, with section (d) of that Rule relating to "protecting a person subject to a subpoena" as well as "enforcement." Subsection (d)(1) of the Rule states that

> [a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

Subsection (d)(2)(B) relates to objections to subpoenas and states that

> [a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
>
> > (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
> >
> > (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Thus, the Court must balance Plaintiffs' needs for the information with the potential for undue burden or expense imposed on the third-party respondent.

Subsection (d)(3)(A) requires the District Court to quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (ii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. "Although Rule 45 does not specifically include relevance or overbreadth as bases to quash a subpoena, 'this court has long recognized that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34.'" ***Parker v. Delmar Gardens of Lenexa, Inc.***, No. 16-2169-JWL-GEB, 2017 WL 1650757, at *3 (D. Kan. May 2, 2017) (*citing **Martinelli v. Petland, Inc.***, No. 10-mc-407-RDR, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010) (internal citations omitted); ***Martin v. Grp. 1 Realty, Inc.***, No. 12-2214-EFM-DJW, 2013 WL 3322318, at *2 (D. Kan. July 1, 2013)). Further, Fed.R.Civ.P. 26(c) allows a court to enter a protective order regarding a subpoena to protect a party from annoyance, embarrassment or oppression. ***Stewart v. Mitchell Transport***, No. 01-2546-JWL, 2002 WL 1558210, at *6 (D. Kan. July 11, 2002). The Court will analyze Plaintiff's third-party subpoenas within this legal framework.

II.  **Motion to Quash Subpoena to Third-Party T-Mobile (Doc. 68).**

As stated above, the subpoena duces tecum at issue in Defendants' first Motion to Quash instructs nonparty T-Mobile to produce cell phone records for

6

Defendant Higgs, including calls received, calls made, length of calls, text messages received, text messages sent, data sent, data received, and data usage from October 25 – 27, 2016. (Doc. 68, at 2.) Defendants argue that because the automobile accident at issue occurred on October 26, 2016, "the subpoenaed records from the day before and after the occurrence exceed the scope of relevant discovery." (*Id.*, at 7 (citations omitted).)

Defendants rely on the Northern District of Oklahoma decision in *Clark v. Johnson*, No. 14-CV-582-JED-PJC, 2015 WL 4694045, at *2 (N.D. Okla. Aug. 6, 2015), to argue that the Court should "limit the scope of the subpoena to a relevant timeframe concerning the accident and to prohibit T-Mobile from producing any information regarding the substance of any communication Defendants may have sent or received during that timeframe." (Doc. 68, at 7-8.) The Court in *Clark* faced a similar issue wherein the defendant in a motor vehicle accident case issued a subpoena duces tecum to the plaintiff's cell phone provider seeking records over several days, resulting in the plaintiff filing a motion to quash based on relevancy. 2015 WL 4694045, at 1.

The court in *Clark* held that whether the plaintiff was "using his cell phone around the time of the accident [was] relevant to the circumstances of the collision, and that relevance outweighed [the plaintiffs'] privacy interest in this limited information." *Id*. at *2. The *Clark* court further held that the defendant insurer

7

was "entitled to see the call records for [the plaintiff decedent's] cell phone from 6:00 a.m. to 7:00 a.m. [on the date of the accident] in order to determine if he was using his cell phone and may have been distracted at the time of the accident." *Id*. The *Clark* court also ruled, however, that the cell phone provider could "not produce any information regarding the *substance* of any communications [the plaintiff decedent] may have sent or received during that time period." *Id*.

According to Defendants, "despite the absence of allegations in the Complaint that Defendant Higgs was using his cell phone at the time of the accident, counsel for Defendants agreed to the subpoena to the extent the time frame was narrowed to 4:30 a.m. to 7:30 a.m. on October 26, 2016, the date of the occurrence." (*Id*., at 8.) Defendants thus ask the Court "to limit the scope of the subpoena to a relevant timeframe concerning the accident and to prohibit T-Mobile from producing any information regarding the substance of any communication Defendants may have sent or received during that timeframe." (*Id*.)

Plaintiff argues that the T-Mobile subpoena at issue herein "is more limited in scope, both temporally and in breadth" than the subpoena in *Clark*. (Doc. 79, at 6.) Rather, according to Plaintiff, the T-Mobile subpoena "is reasonably calculated to lead to the discovery of admissible evidence and is not overbroad in nature." (*Id*.)

> Specifically, the requested cellphone records from
> October 25th through the time of the accident will likely

show the time Defendant Higgs woke on October 25th, went to sleep on October 26th, and woke on October 26th. Whether a Defendant tractor-trailer driver had enough sleep before the date of the accident is relevant to Plaintiff's claim. In addition, Defendant Higgs was in the scope of his employment on October 25th. As such, the requested information would tend to show if Mr. Higgs would use his cell phone in the course of his employment.

As for the requested cell phone records from the time of accident through October 27th, Defendant Higgs responded in his interrogatory answers that '[he does not] remember every person I called' but identified his supervisor (Troy Higgs), mother, grandmother and wife. The requested records after the accident would conclusively determine what fact witnesses may have been called or texted after the accident. There is a possibility that Defendant Higgs shared the details of this accident with these individuals or other fact witnesses via phone call or text messages. The length of the phone call would help establish the nature of the call, and it would help Plaintiff determine whether to depose additional witnesses.

(*Id.*, at 6-7.)

Defendants reply that Plaintiff's arguments are misguided because

(1) the issue regarding Defendant Higgs' schedule, sleep schedule, and whether Defendant Higgs was adequately rested at the time of the accident are collateral to the claims in Plaintiff's First Amended Complaint; (2) Plaintiff's request is the epitome of a fishing expedition as defined by the U.S. Court of Appeals for the Tenth Circuit in ***Koch v. Koch Indus., Inc.***, 203 F.3d 1202 (10th Cir. 2000); and (3) case law supports Defendants' position that the relevant scope of Defendant Higgs' cell phone records should be narrowed to the time of the accident.

9

(Doc. 85, at 4.)  Defendants continue that

> Plaintiff seeks to obtain broad information from Defendant Higgs' cell phone records, without having a 'modicum of objective support' to evidence the need for such extensive information.  ***Kennicott v. Sandia Corp.***, 327 F.R.D. 454, 465 (D.N.M. 2018) (citing ***Tottenham v. Trans World Gaming Corp.***, No. 00 Civ. 7697(WK), 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002)).  Here, Plaintiff raises, for the first time in response to Defendants' Motion to Quash, issues regarding Defendant Higgs' work schedule, sleep schedule, and whether Defendant Higgs was "adequately rested" on the day of the accident.  *See* Pl.'s Resp., Doc. 79, p. 2, 6.  More importantly, these issues are absent from Plaintiff's First Amended Complaint.  *See generally* Pl.'s First Am. Compl., Doc. 25-1.  Indeed, Plaintiff has merely asserted Defendant Higgs' cell phone records are relevant to determine the amount of sleep Defendant Higgs received prior to the accident, but Plaintiff fails to state how the amount of sleep is relevant to this case, when Plaintiff' has never claimed the accident was caused by Defendant Higgs' fatigue or occurred because Defendant Higgs fell asleep.  Pl.'s Resp., Doc. 79, p. 2, 6.  Instead, Plaintiff has raised these issues 'without in fact knowing of any specific wrongdoing by the defendant,' but rather in hopes that casting such a wide net will provide information to support these 'nebulous allegations.'  ***Koch***, 203 F.3d at 1238.  As such, the issues recently raised by Plaintiff are merely speculative. *Id*.

(Doc. 85, at 6.)  On a related note, Defendants argue that Plaintiff's request is not facially relevant.  (*Id*., at 7-10.)

Defendants are correct that Plaintiff has for the first time in the briefing in opposition to the present motion raised issues regarding Defendant Higgs' work schedule, sleep schedule, rest, fatigue, etc.  Defendants are correct that "these

10

issues are absent from Plaintiff's First Amended Complaint." (*See generally* Doc. 25-1.) Defendants are also correct that Plaintiff' has never, prior to the current briefing, "claimed the accident was caused by Defendant Higgs' fatigue or occurred because Defendant Higgs fell asleep."

"When … a plaintiff brings an initial action without any factual basis evincing specific misconduct by the defendants and then bases extensive discovery requests upon conclusory allegations in the hope of finding the necessary evidence of misconduct, that plaintiff abuses the judicial process." **Munoz v. St. Mary-Corwin Hosp.**, 221 F.3d 1160, 1169 (10th Cir. 1995). In the matter before the Court, Plaintiff did not even "bring the initial action" based on this thoroughly speculative conduct by, or condition of, Defendant Higgs. Rather, the conduct was first alleged in regard to Plaintiff's third-party subpoena to T-Mobile. As such, the Court **GRANTS** Defendants' Motion to Quash (Doc. 68). The Court will, however, allow the production as set forth in Defendants' proposed limited scope – Defendant Higgs' cell phone records from time frame of 4:30 a.m. to 7:30 a.m. on October 26, 2016, the date of the occurrence.

### III. Motion to Quash Third-Party Subpoenas for Employment Records (Doc. 70).

As discussed above, Defendants' second Motion to Quash relates to the subpoenas sent by Plaintiff to Liberty Hardwoods, Inc., US Foods, and Foundation Recovery Systems instructing those nonparties to produce employment records for

11

Defendant Higgs, including his complete employment file, all documents related to his employment, documents relating to pre-employment investigations, and documents relating to his termination. (Doc. 70, at 2.) Defendants argue that "Defendant Higgs' employment records and personnel files from his employers following the motor vehicle accident are wholly unrelated and irrelevant to the subject matter of this litigation, and, therefore, exceed the scope of relevant discovery." (*Id*., at 7 (citation omitted).)

Defendants concede that "both prior and current employment records of the driver are relevant for discovery purposes" in cases such as this, but that the subpoenas that "only concern Defendant Higgs' subsequent employment following the subject occurrence … have no bearing on Plaintiff's claims against Defendants … for negligence or negligent hiring, training, supervision, and retention." (*Id*., at 8 (citations omitted).) In other words, Defendants argue that "Defendant Higgs' subsequent employment history does not affect the claims or defenses of any party to the current litigation, and should be found to be irrelevant." (*Id*. (citation omitted).)

Plaintiff agrees that Defendant Higgs' "subsequent employment information is not relevant to his claim against Defendants … for negligence and negligent hiring, training, supervision, and retention." (Doc. 80, at 13.) That stated, Plaintiff argues that Defendants "fail to meet there [sic] burden to show how these

12

subpoenas are not reasonable [sic] calculated to lead to relevant information pertaining to Plaintiff's claim of negligence against Defendant Higgs." (*Id.*)

As an initial matter, the Court notes that the "reasonably calculated" standard was discarded by federal courts almost four years ago in favor of the proportionality standard. ***Benney v. Midwest Health, Inc.***, No. 17-2548-HLT-KGG, 2018WL 6042591, *2 (D. Kan. Nov. 19, 2018). "The standard scope of discovery as applied to a subpoena is the same standard found in Rule 26(b)(1), which allows parties to, in part, 'obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" ***Erickson, et al. v. Sprint Sol., Inc.***, No. 16-MC-212-JWL-GEB, 2016 WL 2685224, *3 (D. Kan. July 12, 2016) (citations omitted).

That stated, the party seeking the protective order or objecting to the subpoena has the burden to establish that the information sought is improper. ***Parker v. Delmar Gardens of Lenexa, Inc.***, 16-2169-JWL-GEB, 2017 WL 1650757, *5 (D. Kan. May 2, 2017). Defendants counter, however, that the information sought by Plaintiff is not facially relevant, thus shifting the burden to Plaintiff to establish relevance. (Doc. 86, at 10-11 (citing ***G.D. v. Monarch Plastic Surgery, P.A.***, 239 F.R.D. 641, 645 (D. Kan. 2007). Even assuming Defendants have the burden, the Court finds that Defendant has established that the information is not relevant to the claims and defenses in this case.

13

Defendants reply that Plaintiff

> fails to offer any explanation detailing how such
> employment records can be used to prove Defendant
> Higgs' alleged negligence in operating the tractor-trailer
> on October 26, 2016. *See generally* Pl.'s Resp., Doc. 80;
> Pl.'s First Am. Compl. ¶40 (alleging Defendant Higgs
> negligently backed his vehicle in an unsafe manner
> across a highway, failed to maintain a proper lookout,
> failed to pay proper attention to conditions on the
> roadway, failed to yield the right-of-way, failed to wear
> his corrective lenses, failed to properly inspect his trailer
> before his trip, and maintained the trailer with inoperable
> lamps).

(Doc. 86, at 7.) The Court agrees with Defendants that the requested information has no bearing on Defendant Higgs' potential negligence on the date in question.

Plaintiff points out that "Defendant Higgs related on his application to Defendant Paxton Hardwoods that he had semi-truck driving experience from 2010 through 2015," but in his deposition, "this experience was found to be in dispute." (Doc. 80, at 14.) Plaintiff states that he "was not provided information pertaining to all of Defendant Higgs' previous citations, motor vehicle accidents, and prescription eyewear," which he contends the "are reasonably calculated to lead to relevant information in these regards." (*Id.*) Further, Plaintiff argues that "the information will determine if Defendant Higgs reflected the same experience/qualifications as listed in his employment application to Defendant Paxton Hardwoods, LLC, and would serve as character/impeachment evidence if not." (*Id.*) Defendants correctly point out, however, that the Federal Rules of

14

Evidence explicitly prohibit the use of character evidence to show a person acted in conformity therewith on a given occasion. (Doc. 86, at 9 (citing Fed.R.Evid. 404(a)(1), (b)(1).)

Finally, Plaintiff indicates that he needs the requested information regarding Defendant Higgs' "experience/qualifications, his accident history, his prescription lense [sic] history, his charges/citations history, character evidence, and impeachment evidence" from Higgs' subsequent employers because Plaintiff believes Higgs did not disclose this information during discovery. (Doc. 80, at 10-11, 13-15.) As Defendants argue however, "[i]f Plaintiff genuinely believed Defendant Higgs failed to disclose discoverable information, the proper mechanism to obtain the information is a motion to compel" supplemental discovery responses from Higgs, which Plaintiff failed to do. (Doc. 86, at 13-14.)

Accordingly, Defendants Motion to Quash (Doc. 70) the subpoenas to Defendant Higgs' former employers, who are nonparties to this case, is **GRANTED**.

IT IS THEREFORE ORDERED that Defendants' Motion to Quash (Doc. 68) the subpoena directed at nonparty T-Mobile is **GRANTED**. The Court, however, **ORDERS** the production as set forth in Defendants' proposed limited

scope – Defendant Higgs' cell phone records from time frame of 4:30 a.m. to 7:30 a.m. on October 26, 2016, the date of the occurrence.

IT IS FURTHER ORDERED that Defendants' Motion to Quash (Doc. 70) the subpoena directed at nonparties Liberty Hardwoods, Inc., US Foods, and Foundation Recovery Systems is **GRANTED**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this \_\_\_ day of September, 2019.

S/_____
KENNETH G. GALE
United States Magistrate Judge